[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} This is an appeal by defendant-appellant, Andre K. Battle, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following a jury trial in which appellant was found guilty of three counts of aggravated robbery, four counts of robbery, two counts of kidnapping and one count of having a weapon while under disability, all with gun specifications.
 {¶ 2} On January 10, 2002, appellant was charged under a multi-count indictment arising out of an incident in which two individuals robbed a Dairy Mart store in Reynoldsburg, Ohio. The matter came for trial before a jury beginning December 9, 2002. The state's witnesses included appellant's alleged accomplice, Jack McCague, and Dairy Mart employees Ravindra Reddy and Jawwad Ali.
 {¶ 3} On January 3, 2002, at approximately 12:55 a.m., Dairy Mart clerks Reddy and Ali were preparing to close the store when a black male entered, pulled a mask down over his face, and pointed a gun at Ali, forcing him into a back room where a safe was located. When Ali indicated he did not know how to open the safe, the assailant struck him with the gun and threatened to shoot him.
 {¶ 4} The other store clerk, Reddy, thinking the assailant did not notice him, ran outside the store where he encountered a white male, identified at trial as McCague. Reddy assumed that McCague was a customer, and he asked the man for help, but McCague pulled out a handgun and ordered Reddy back inside the store. Reddy opened the cash register and McCague took the money, totaling $160. McCague also took Reddy's wallet, which contained $39, as well as a bag containing Reddy's personal belongings, including his checkbook and phone cards.
 {¶ 5} McCague's accomplice then told McCague to bring Reddy to the back room. When Reddy entered the room where the safe was located, he observed this man hitting Ali in the face and kicking him; the assailant ordered Ali to open the safe, and he threatened to shoot him if Reddy did not assist in opening the safe. Reddy indicated that the workers did not have access to the safe, at which time the man walked over to Reddy and hit him. He then took Ali's wallet and ordered the clerks to lie on the floor. The man told McCague to "go outside, take all of our things and * * * check whether anybody is outside." (Tr. 42.) The man indicated that he was going to shoot the clerks before he left. Reddy subsequently heard someone walking away from the door, and after approximately two or three minutes the clerks got up and called the police.
 {¶ 6} Within minutes of the robbery, two police cruisers responded to a dispatch regarding the incident. As the cruisers approached the area of the Diary Mart store, a vehicle without headlights sped out of a nearby apartment complex, nearly colliding with one of the cruisers. The officers stopped the vehicle, which contained McCague and a man identified at trial as appellant. The officers ordered the two men out of the car, and one of the officers noticed a handgun on the floorboard of the passenger seat, and another handgun directly next to the passenger seat. The officer also observed a plastic bag containing money and phone cards. The officers subsequently learned that the vehicle belonged to appellant.
 {¶ 7} As a result of the incident, McCague entered a guilty plea to one count of aggravated robbery, with a firearm specification, and received a sentence of eight years incarceration. As noted, McCague testified at trial on behalf of the state. McCague first met appellant in July or August 2001. McCague's girlfriend at the time was Lainie Slaughter, and Slaughter had a friend, identified as Paula, who dated appellant. McCague and his girlfriend lived at Paula's apartment.
 {¶ 8} McCague gave the following account of the events surrounding the Dairy Mart incident. On January 2, 2002, during the evening hours, McCague was in Paula's apartment, where he had taken the drug "Ecstasy." Appellant later drove over to Paula's apartment in his red Cavalier. McCague and appellant were talking, and McCague "had the idea of getting money." (Tr. 129.) Appellant and McCague subsequently left the apartment to procure two handguns from a friend of McCague.
 {¶ 9} After obtaining a .45 caliber handgun and a .380 caliber handgun, they drove around and eventually decided to stop at a Dairy Mart store located on Channingway Boulevard. McCague was aware that the store closed at 1:00 a.m., and he also knew the employees would be taking money out of the register at that time. McCague took the .45 caliber weapon and waited outside the store while appellant took the .380 caliber gun and went inside. When one of the employees attempted to flee the store, McCague pulled his gun on the clerk and made him go back inside. The clerk then emptied the cash register for McCague, and McCague took the clerk's wallet. He heard a voice from the back room saying, "I'm gonna kill." (Tr. 137.) McCague then forced the clerk to the back room where the safe was located, and ordered the clerk to open the safe. Appellant and another clerk were already in the back room, and McCague heard the clerk tell appellant, "don't hit me, don't hit me no more." (Tr. 136.) They were unable to get the safe open. At that point, McCague was "kind of scared, I didn't know what to do. I was debating whether I should run or stay there." (Tr. 136.)
 {¶ 10} McCague eventually exited the back room, grabbed a wallet on the counter and ran out of the building to appellant's car. A few seconds later appellant was also at the car, and drove back to the parking lot of the apartment where they searched through the bag containing the items taken from the store. The two men then decided to leave the area, but appellant forgot to turn on the car's headlights, and as he exited the apartment complex his vehicle almost struck a police cruiser. At trial, McCague identified a "dude rag" that appellant was wearing at the time of the incident.
 {¶ 11} Appellant did not call any witnesses on his behalf, but a surveillance tape taken from the Dairy Mart store was played during appellant's case-in-chief. Following deliberations, the jury found appellant guilty of three counts of aggravated robbery, four counts of robbery and two counts of kidnapping. The trial court separately found appellant guilty of having a weapon while under disability. The trial court sentenced appellant by entry filed December 19, 2002. For purposes of sentencing, the trial court merged counts 17 (robbery) and 18 (robbery) of the indictment with count 16 (aggravated robbery), and the court further merged counts 27 (robbery) and 28 (robbery) with count 26 (aggravated robbery).
 {¶ 12} On appeal, appellant sets forth the following three assignments of error for review:
 {¶ 13} "I. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence."
 {¶ 14} "II. The trial court erred by imposing consecutive sentences upon the defendant contra R.C. 2929.14(E)(4).
 {¶ 15} "III. The trial court erred by imposing consecutive sentences as said offenses were allied offenses of similar import contra R.C. 2941.25(A) and defendant's rights under both the federal and state constitutions."
 {¶ 16} Under his first assignment of error, appellant challenges his convictions, asserting they were based upon insufficient evidence and were against the manifest weight of the evidence.
 {¶ 17} In State v. Sexton, Franklin App. No. 01AP-398, 2002-Ohio-3617, this court noted the different standards of review in considering a sufficiency and manifest weight argument, stating as follows:
 {¶ 18} "To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proved beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. * * * We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A conviction based upon legally insufficient evidence amounts to a denial of due process * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant. * * *
 {¶ 19} "A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * * Id., at ¶ 30-31. (Citations omitted.)
 {¶ 20} R.C. 2911.01 defines the elements of aggravated robbery, and provides in part:
 {¶ 21} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 22} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 23} The offense of robbery is defined under R.C. 2911.02 as follows:
 {¶ 24} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 25} "(1) Have a deadly weapon on or about the offender's person or under the offender's control;
 {¶ 26} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on anther;
 {¶ 27} "(3) Use or threaten the immediate use of force against another."
 {¶ 28} R.C. 2905.01(A) sets forth the offense of kidnapping, and states in pertinent part:
 {¶ 29} "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 30} "* * *
 {¶ 31} "(2) To facilitate the commission of any felony or flight thereafter[.]"
 {¶ 32} In the present case, the state presented evidence that a black male, armed with a handgun, entered the Dairy Mart store while an accomplice waited outside with another weapon. The man pointed the gun at one of the clerks, Ali, and ordered him to the back room. The assailant ordered Ali to open the safe, and struck Ali with the weapon. When the other clerk, Reddy, fled the store, appellant's accomplice, McCague, pulled his weapon and forced him back inside. McCague ordered Reddy to open the cash register, and McCague took $160 from the register and also took Reddy's wallet and personal belongings. McCague then forced Reddy to the back room, where the other assailant was threatening Ali. When Reddy indicated that they could not open the safe, the assailant came over and struck Reddy with the weapon. Before fleeing the store, this man also took Ali's wallet, and threatened to shoot both of the clerks. Within minutes of the robbery, police officers stopped a vehicle being driven by appellant in which McCague was a passenger. Officers found two handguns and a bag containing items from the store. At trial, McCague testified that appellant committed the robbery with him.
 {¶ 33} When viewed in a light most favorable to the state, there was sufficient evidence presented upon which the jury could have found appellant guilty of the offenses of aggravated robbery, robbery and kidnapping, as well as the gun specifications. The evidence was also sufficient to support appellant's conviction on the charge of having a weapon while under disability. Further, even though the evidence indicated that it was McCague who pointed a weapon at Reddy and took Reddy's wallet and money from the register, there was sufficient evidence that appellant and McCague acted in concert to commit the offenses at issue, and we note that the trial court instructed the jury on complicity pursuant to R.C. 2923.03. See State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138 (although victim did not indicate that appellant personally stole cash, appellant is guilty of the aggravated robbery of the victim under principles of complicity because appellant aided his co-defendants in the crimes).
 {¶ 34} Regarding the issue of manifest weight, there is nothing in the record to indicate that the jury lost its way or created such a miscarriage of justice that appellant's convictions must be reversed. The state's witnesses included the two robbery victims and McCague, an accomplice to the crime. It was within the province of the trier of fact to assess the credibility of McCague and to determine whether his testimony was worthy of belief. Upon review of the record, the findings of guilty were supported by sufficient evidence and were not against the manifest weight of the evidence.
 {¶ 35} Based upon the foregoing, appellant's first assignment of error is without merit and is overruled.
 {¶ 36} We will address appellant's second and third assignments of error in inverse order. Under his third assignment of error, appellant argues the trial court erred in failing to merge at least two of the aggravated robbery convictions because they constitute allied offenses of similar import. Specifically, appellant contends in his appellate brief that, "when the employees of Dairy Mart were robbed it was also a robbery of Dairy Mart itself." Appellant further argues that there was no evidence that he removed any items from Ali; rather, the evidence indicated that McCague took items from both the store register and Ali.
 {¶ 37} Appellant's contentions are unpersuasive. In State v. Jones (June 13, 2000), Franklin App. No. 99AP-704, the defendant made a similar argument, asserting that the court should not have imposed separate sentences for his aggravated robbery of a convenience store and his aggravated robbery of a store customer. This court rejected defendant's argument, holding in part:
 {¶ 38} "When a defendant commits aggravated robbery against different victims during the same course of conduct, a separate animus exists for each offense. State v. Byrd (1987), 32 Ohio St.3d 79, 85 * * *. In Byrd, the court determined that the defendant demonstrated a separate animus with respect to a convenience store and the convenience store clerk when the defendant took money from the cash register and a wallet and jewelry from the clerk. In this case, [defendant] took cigarettes and money from the cash register at the Fast and Friendly and money that [the customer] was carrying in his pocket. Thus, [defendant] possessed a separate animus as to each victim."
 {¶ 39} Similarly, in State v. Anderson (Jan. 31, 1990), Summit App. No. 14183, the defendant, who took cash from a Dairy Mart cash register and safe, and who also took the purse of a victim, argued on appeal that the trial court erred in failing to merge the two counts of aggravated robbery. The court rejected the defendant's argument, holding that "[t]he robbery of the Dairy Mart was a separate act from the robbery of the victim," and that "[t]hese acts were separate crimes independent of each other."
 {¶ 40} In the present case, the state presented evidence that appellant and his accomplice took funds from the store's cash register, as well as personal property from each of the store clerks, Ali and Reddy, thereby constituting three separate robbery offenses. We therefore reject appellant's contention that the robbery of the store was not a separate act from the robbery of the clerks. Further, to the extent appellant contends that McCague took money from the cash register and items from one of the store's clerks, we have previously noted that there was sufficient evidence to show that appellant and McCague acted in concert to rob the store and the store's employees. Accordingly, we find no merit to appellant's contention that the trial court erred in failing to merge the offenses.
 {¶ 41} Appellant's third assignment of error is without merit and is overruled.
 {¶ 42} Under his second assignment of error, appellant asserts the trial court erred in imposing consecutive sentences without stating its reasoning on the record, in contravention of R.C. 2929.14.
 {¶ 43} In State v. Scott, Franklin App. No. 01AP-801, 2002-Ohio-2251, this court discussed the requirements for imposing consecutive sentences as follows:
 {¶ 44} "Pursuant to R.C. 2929.14(E), the court may impose consecutive sentences for conviction of multiple offenses if the court finds that consecutive sentences are necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 45} "The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 46} "The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 47} "The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 48} "Further, when a trial court imposes consecutive sentences under R.C. 2929.14, it must also comply with R.C. 2929.19(B)(2)(c) which requires that the sentencing court `make a finding that gives its reasons for selecting the sentences imposed.' * * *
 {¶ 49} "The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). * * * Thus, after the court has made the required findings under R.C. 2929.14, it must then justify those findings by identifying specific reasons supporting the imposition of consecutive prison terms. * * * A trial court's failure to sufficiently state its findings and reasons requires remand for resentencing. * * *" Id., at ¶ 8-13. (Citations omitted.)
 {¶ 50} The Ohio Supreme Court has recently held that a trial court, when imposing consecutive sentences pursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), "is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, paragraph one of the syllabus.
 {¶ 51} In the present case, the states concedes, and we find upon review of the record, that the trial court failed to state its reasons on the record for imposing consecutive sentences. Accordingly, appellant's second assignment of error is sustained and we vacate the sentence and remand to the trial court for re-sentencing consistent with this opinion.
 {¶ 52} Based upon the foregoing, appellant's first and third assignments of error are overruled, and his second assignment of error is sustained. The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part and reversed in part; cause remanded.
BOWMAN and KLATT, JJ., concur.